# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CUONG SON,<br>        Petitioner | : | No. 3:26cv477 |
| | : | |
| | : | (Judge Munley) |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL ROSE, ICE Field Office<br>Director, Philadelphia, Enforcement<br>and Removal Operations, U.S.<br>Immigration and Customs<br>Enforcement; and<br>JESSICA SAGE, Warden,<br>Lewisburg U.S. Penitentiary,<br>        Respondents | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |

## MEMORANDUM ORDER

Before the court is Petitioner Cuong Son's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).  He is an immigration detainee in the custody of Immigration and Customs Enforcement ("ICE") at FCI-Lewisburg.

Son was born in Vietnam. Id. ¶ 1.  He entered the United States in 1991, at age seven. Id.  In 2003, Son was convicted of a drug conspiracy offense. Id. ¶ 26.  He spent approximately two years in prison. Id.  According to the petition, Son has not re-offended; rather, he alleges that he is a hardworking and productive member of society who supports his family. Id. ¶ 29.

In April 2011, an immigration judge ("IJ") ordered that Son be removed to Vietnam. Id. ¶ 27. Petitioner was not removed because Vietnam would not accept him. Id. ¶ 28. After approximately 90 days in custody, ICE released the petitioner under an order of supervision. Id.

On December 12, 2025, when Son appeared for a "routine" ICE check-in, he was re-detained on the removal order. Id. ¶ 31. According to the government, ICE provided Son with verbal and written notice of revocation of release, citing both an Executive Order and a significant likelihood of removal in the reasonably foreseeable future. (Docs. 3-2, 3-3).

Son has been subject to a removal order for 15 years. As for the recent removal efforts, Son asserts that ICE has not obtained a travel document from Vietnam, nor has Vietnam agreed to accept him. Id. ¶ 32. In support of the non-repatriation averments in the petition, Son has supplied declarations of two individuals taken from the evidence supplied in Luong v. Oddo, No. 3:25-cv-422, (W.D. Pa.) (Taylor, M.J.). (Docs. 6–8). In short, according to these declarants in the Luong matter, removal of Vietnamese nationals who entered prior to 1995 "cannot be presumed and is often not significantly likely in the reasonably foreseeable future." (Doc. 7, T. Ha. Decl.) Consequently, among other claims, Son argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001).

The government has supplied a counter-declaration from Alex E. Hans, an ICE deportation officer. (Doc. 3-6). According to Deportation Officer Hans, the process for obtaining petitioner's travel document has been ongoing within the administration. Id. ¶ 9. Hans indicates that the travel document application previously completed by the petitioner was "submitted to HQ-RIO for approval and submission to the Vietnam Consulate" as of March 2, 2026. [1] Id. The deportation officer further states that ICE reviewed Son's custody on February 19, 2026 and it was determined that he would remain in custody due to past criminal convictions and significant likelihood of removal to Vietnam in the foreseeable future.[2] Id. ¶ 10. Hans also supplied information that 327 individuals

---

[1] HQ-RIO is an ICE acronym for "Headquarters, Removal and International Operations." (Doc. 8. T. Nguyen Decl. ¶ 9).

[2] Respondents argue that Son's petition should be denied for failure to exhaust administrative remedies (Doc. 3, Resp. at 2, 8–9). There is no statutory provision requiring administrative exhaustion at Son's stage of the removal process. Thus, any exhaustion requirement would be prudential in this case, i.e., judge-made and discretionary. Prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). "But even when courts might otherwise require exhaustion, they may excuse it when, for instance, 'waiver, estoppel, tolling or futility' applies." Id. (quoting Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007)). In immigration habeas cases, administrative exhaustion has been excused where there is evidence that the administrative outcome has been predetermined. Cox v. Monica, No. CIV.A. 1:07-CV-0534, 2007 WL 1804335, at *3 (M.D. Pa. June 20, 2007). Further, the futility exception is appropriate "when the decisionmakers in the administrative process will almost certainly reject petitioner's requested relief." Ndiaye v. Jamison, No. CV 25-6007, 2025 WL 3229307, at *4 (E.D. Pa. Nov. 19, 2025), adhered to, No. CV 25-6007, 2026 WL 373247 (E.D. Pa. Feb. 10, 2026). Regardless of the regulatory scheme set forth at 8 C.F.R. § 241.13, ICE is highly unlikely to reverse course and release petitioner on an order of supervision. According to the evidence supplied in this case to date, ICE believes that a 20-year-old drug conviction categorizes the petitioner as an "invader," (See Doc. 3-2, Resp. Ex. 1, I-213 Record at ECF p.

who were pre-1995 entries were removed to Vietnam in fiscal year 2025. Id. ¶ 11. Per Hans, no travel document request has been denied by Vietnam since that fiscal year. Id. ¶ 11.

The petition for writ of habeas corpus delineates five claims.[3] Count I of Son's petition asserts a claim for violation of the Due Process Clause, 8 U.S.C. § 1231(a), 8 C.F.R. § 241.13, and the Administrative Procedure Act (APA). A portion of Count I is fairly construed as a claim pursuant to the Zadvydas Due Process framework.

Section 1231 of the Immigration and Nationality Act ("INA") governs detention and removal of aliens ordered removed. When an alien is ordered removed, the government "shall" remove the alien from the United States within a period of 90 days, the "removal period." 8 U.S.C. § 1231(a)(1)(A). Section 1231

---

2) ("SUBJECT is subject to President Trump's Executive Order titled 'Protecting the American People Against Invasion,' signed January 20, 2025."); (Doc. 3-6, Resp. Ex. 5, A. Hans Decl. ¶ 10) ("On or about February 19, 2026, a custody panel review hearing took place and determined that Petitioner would remain in custody due to past criminal convictions and significant likelihood of removal in the foreseeable future (SLRRFF) to Vietnam.") Therefore, Son's failure to exhaust any administrative remedies is excused because it would be an exercise in futility.

[3] The court has subject matter jurisdiction under 28 U.S.C § 2241(c)(3), which grants federal courts authority to entertain petitions from persons held "in custody in violation of the Constitution or laws…of the United States." Section 2241 remains the basic method for obtaining review of continued custody after a deportation order becomes final. Zadvydas, 533 U.S. at 687. The court has habeas jurisdiction because Son is detained at FCI-Lewisburg, which is located within the Middle District of Pennsylvania. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) ("for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").

contains statutory provisions defining when the removal period begins. Id., §

1231(a)(1)(B).  The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Id.  During the removal period, the individual subject to the removal order shall be

detained. Id., § 1231(a)(2)(A).

Only Section 1231(a)(1)(B)(i) is applicable to the petitioner.  That is, Son's

removal period began on the date his removal order became administratively

final.  Son's order of removal became administratively final on April 14, 2011

when he waived appeal. (Doc. 3-6, Resp. Ex. 5, A. Hans Decl. ¶ 5).  The Section

1231(a)(1)(A) removal period in this case ended on July 13, 2011.  Son was then

released a few days after the statutory removal period ended.

"After that 90-day period, aliens ordered removed as inadmissible under 8

U.S.C. § 1182, like petitioner may be detained beyond the removal period or

released under supervision." Munoz-Saucedo v. Pittman, 789 F. Supp. 3d 387,

395 (D.N.J. 2025) (quoting 8 U.S.C. § 1231(a)(6); Zadvydas, 533 U.S. at 683)

(cleaned up).  In Zadvydas, the Supreme Court construed the statute to permit

detention "only for a period reasonably necessary to secure removal," and

recognized a "presumptively reasonable" six-month detention period.[4] 533 U.S. at 699, 701. After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." Id. at 701.

Son has been in custody for four months during the current period of detention. District courts have split on the issue of whether the presumptively reasonable six-month Zadvydas period is cumulative or whether a new period begins from the time of re-detention. Abuelhawa v. Noem, 811 F. Supp. 3d 847, 856 (S.D. Tex. 2025) (collecting cases). Most courts considering the issue have concluded that the Zadvydas period is cumulative. Id. That alleviates a concern that the government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them. Id. As in this case, when faced with a decade-plus gap between the detention periods and where the detain and release cycle was not a concern, the Abuelhawa court in the Southern District of

---

[4] The statute's use of "may" suggests discretion, not necessarily unlimited discretion; it is thus ambiguous. Clark v. Martinez, 543 U.S. 371, 377 (2005) (quoting Zadvydas, 533 U.S. at 697, 689, 699). Considering that perceived ambiguity and the serious constitutional threat posed by indefinite detention of aliens who had been admitted to the country, the United States Supreme Court interpreted Section 1231(a)(6) to permit only detention that is related to the statute's basic purpose of effectuating an alien's removal. Id. (quoting Zadvydas, 533 U.S. at 699)); see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022) (discussing Zadvydas).

Texas applied "a uniform rule that counts and sums prior time in detention[,]" because an individual's liberty was at issue. Id.

The court will not create a uniform rule and place it on top of another judge-made uniform rule. That is, "for the sake of uniform administration in the federal courts," Zadvydas recognized the presumptively reasonable six-month detention period for noncitizens subject to a final order of removal. 533 U.S. at 701. That six-month presumption period was also selected as a benchmark of constitutionality from other contexts. Id. Zadvydas, however, said nothing about that six-month period being cumulative or subject to a reset. Rather, the Supreme Court took a very broad statute and narrowed its scope to avoid violation of the Due Process Clause. See Guerrero-Sanchez v. Warden York Cnty. Prison, 905 F.3d 208, 221 (3d Cir. 2018), abrogated by Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022) (citations omitted).

Petitioner requests that the court adopt a cumulative rule for the calculation of the Zadvydas presumption period. The court cannot do so. On at least two occasions, the Supreme Court has faulted Circuit Courts of Appeals for "going significantly further than Zadvydas." Johnson, 596 U.S. at 582 (citing Jennings v. Rodriguez, 583 U.S. 281, 299 (2018)). Therefore, absent additional guidance from a higher court or evidence of the government continuously releasing and re-detaining the petitioner, the court applies Zadvydas in a more confined manner

7

— there must be six months of *continuous* detention before the presumptively reasonable period ends.  See 533 U.S. at 701; see also Jennings, 583 U.S. 843 (noting Zadvydas's "generous application of the constitutional avoidance canon"); Vega v. Tekoh, 597 U.S. 134, 144, 149 (2022) (discussing judge-made "constitutional rules" and applying them only where their benefits outweigh their costs).

In less than two months, however, Son's detention will hit the six-month mark and his Zadvydas claim will be in a different position. See Alexander v. Att'y Gen. U.S., 495 F. App'x 274, 276–77 (3d Cir. 2012) ("Zadvydas does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief.").

In the event of a later-filed petition, the court will also be in a better position to evaluate the parties' evidence as to whether there is a significant likelihood of the petitioner's removal in the reasonably foreseeable future.[5]  At this time, the evidence provided by the respondents buttresses the presumption of reasonableness.  As time passes, the government's statements that the

---

[5] At this posture, both sides mostly produced generalized evidence, i.e., evidence regarding repatriation of Vietnamese nationals who arrived in the United States before 1995.  Dismissing the Zadvydas claim without prejudice will permit the parties to reframe the issue with more evidence specific to the petitioner, such as a declaration from the petitioner himself or a more-tailored declaration from an ICE agent, explaining the steps taken internally to secure the petitioner's removal to Vietnam.

petitioner is "SLRRFF" lose their weight if not supported by more and more evidence. Therefore, to the extent that Count I raises a <u>Zadvydas</u> claim, it will be denied without prejudice.

The remainder of Count I and Count II advance a claim that the government is violating its own regulations by revoking the petitioner's order of supervision.[6] (Doc. 1, Pet. ¶ 81 (alleging violations of 8 C.F.R. § 241.13 and the Administrative Procedure Act) ¶¶ 86–90 (alleging violations of the <u>Accardi</u> doctrine, <u>United States ex rel. Accardi v. Shaughnessy</u>, 347 U.S. 260, 268 (1954), and 8 C.F.R. § 241.13(i)(2)).

The regulation cited by petitioner provides:

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

---

[6] Respondents challenge the court's jurisdiction over these claims pursuant to the provisions of 8 U.S.C. § 1252(a)(5), (b)(9), and (g). (Doc. 3, Resp. at 14–19). On the same page of the beginning of this argument, but in a footnote, the government also argues that the INA and APA claims "depend entirely upon the success of his due process claim under <u>Zadvydas</u>, so the Court's rejection of his <u>Zadvydas</u> argument would require it to reject these arguments as well." <u>Id.</u> at 14 n.4. The court agrees with the government's footnoted argument and need not reach whether the court has jurisdiction to hear any claims related to the revocation of Son's supervision order. Rather, this memorandum order notes the evidence supplied by the government about following its own regulations as evidence informing the <u>Zadvydas</u> claim at this time.

9

8 C.F.R. § 241.13(i)(2).

The "changed circumstances," as explained to petitioner, were the result of an Executive Order, i.e., a directive to DHS agencies by President Trump, entitled "Protecting the American People Against Invasion," (Doc. 3-2, Resp. Ex. 1, I-213 Record at ECF p. 2), and a determination, after administrative review, that there is a significant likelihood of his removal in the reasonably foreseeable future, (Doc. 3-3, Resp. Ex. 3, Notice of Revocation of Release).  Both a change in detention priorities *and* a change in the likelihood of removal were offered as reasons by the government.  Both qualify as "changed circumstances" in any sense of the phrase.  Furthermore, in his declaration, Deportation Officer Hans alludes to the administration's success in repatriating individuals to Vietnam in fiscal year 2025.  (Doc. 3-6, ¶ 11).  Regardless of the truth of that statement, which is not being determined,  Hans's declaration provides another explanation of "changed circumstances" for the purposes of the regulation.[7]

Ultimately, the petitioner's "the government is not following its own rules" argument may not be viable on its own but, at a minimum, the same evidence to support that argument will be offered in support of any Zadvydas claim raised

---

[7] Additionally, both sides agree that ICE provided the petitioner with a custody panel review in February 2026. (Doc. 4, Traverse, at 3).  That further indicates that the government has complied with the regulations set forth at 8 C.F.R. § 241.4, as referenced in regulation Section 241.13(i)(2).

after the presumption period ends.  The remainder of Count I and all of Count II will thus be denied without prejudice.

The petitioner's remaining theories are even less viable.  That is, Count III and Count IV of the petition assert claims in the event that the government designates a third country for removal.  There is no evidence that the government has designated a third country for removal in Son's case or that it intends to "banish" the petitioner to Ghana, the example used in his petition. Federal courts cannot decide hypothetical issues or give advisory opinions. Princeton Univ. v. Schmid, 455 U.S. 100, 102 (1982)  Thus, the preemptive strikes known as Counts III and Count IV in the petition will be denied. [8]

Therefore, for the reasons set forth above, it is hereby **ORDERED** that:

1) Cuong Son's petition for writ of habeas corpus is **DENIED** without prejudice and may be refiled once his detention has surpassed the six-month period presumed reasonable in Zadvydas or, otherwise, when factual developments warrant it, see Alexander, 495 F. App'x. at 278; and

---

[8] The denial of Son's third-country removal claims are subject to further developments in his case and in the case law.  See D.V.D. v. U.S. Dep't of Homeland Sec., No. CV 25-10676-BEM, --- F.Supp. 3d. ----, 2026 WL 521557 (D. Mass. Feb. 25, 2026), on appeal, No. 26-1212 (1st Cir. Feb. 28, 2026).  Because the petitioner requests an improper advisory opinion, the court is not deciding whether it has jurisdiction over the claims in Counts III and IV. And because the court is not granting relief on Counts I-IV, the declaratory relief requested in Count V will be denied.

2) The Clerk of Court is directed to close this case.

Date: _____                    BY THE COURT:


                                          _____
                                          JUDGE JULIA K. MUNLEY
                                          United States District Court

12